**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEKSEI YURIEVICH BURKOV,<br>    a/k/a "Aleksey Yurevich Burkov,"<br><br>*Defendant*. | Crim. No. 1:15-CR-245<br><br>The Honorable T.S. Ellis, III |

**MOTION FOR ORDER AUTHORIZING
ALTERNATIVE PROCEDURES FOR VICTIM NOTIFICATION**

The United States of America, by and through G. Zachary Terwilliger, U.S. Attorney, Alexander P. Berrang and Kellen S. Dwyer, Assistant U.S. Attorneys, move this Court for entry of an Order authorizing the government to use alternative procedures to notify potential victims in the above-captioned case under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.

**BACKGROUND**

In support of this Motion, the government proffers the following:

1.      On February 4, 2016, a federal grand jury in the Eastern District of Virginia returned a superseding indictment that charged Defendant Aleksei Yurievich Burkov with the following five federal offenses: conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); access device fraud, in violation of 18 U.S.C. § 1029(a)(2) and 2(a); conspiracy to commit wire fraud, in violation of 18 U.S.C. §  1349; wire fraud, in violation of 18 U.S.C. § 1343; and conspiracy to commit access device fraud, identity theft, computer intrusion, wire fraud, and money laundering, in violation of 18 U.S.C. § 371.

2. The charges against the defendant arise from his operation of Cardplanet LLC and Cardplanet.cc, which did business through the website www.cardplanet.cc (collectively, "Cardplanet"), and an online cybercriminal forum known as "Direct Connection." The number of companies and individuals victimized by or through the operation of Cardplanet and Direct Connection number in the tens of thousands.

3. Through Cardplanet, the defendant offered for sale stolen payment card data form more than 150,000 compromised payment cards (including cards branded in the names of the largest credit card companies in the United States), and the defendant did so knowing that such stolen data would be used to create counterfeit cards in order to make fraudulent purchases. Moreover, the compromised cards sold through CardPlanet included at least tens of thousands of cards that had been issued by U.S. financial institutions to cardholders in the United States, some of whom were residents of the Eastern District of Virginia.

4. As for Direct Connection, the site enabled elite cybercriminals to meet in a secure location where they would have access to other elite and trusted co-conspirators who could plan and assist in cybercrimes, including the advertisement, purchase, and sale of stolen goods and illegal services. The stolen goods advertised on Direct Connection included stolen payment card data, stolen personal identifying information, and malicious software (or "malware"). For example, on or about August 8, 2011, a Direct Connection member posted the following message in a portion of the site dedicated to the sale of payment cards: "We're selling US CC with a known available balance. 100% validity. It's possible to pick by the state. Prices: $5 for a CC + $0.5 for every 1K on the balance (that is 1-2K available balance = $5.5, 2-3K = $6, 3-4K = $6,5 etc)."

## ANALYSIS

The Crime Victims' Rights Act (CVRA), codified at 18 U.S.C. § 3771, provides certain rights to victims in federal criminal proceedings. Among these rights is the right to "reasonable, accurate, and timely notice" of public court proceedings. *Id.* § 3771(a). The CVRA requires "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime . . . [to] make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection [3771](a)," *Id.* § 3771(c)(1), and it instructs the Court to "ensure that the crime victim is afforded" those rights, *Id.* § 3771(b)(1). The CVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." *Id.* § 3771(e)(2)(A). Importantly, the CVRA recognizes that for crimes involving multiple victims, the Court has discretion to adopt procedures to accord victim rights without unduly interfering with the criminal proceedings. Thus, 18 U.S.C. § 3771(d)(2) provides:

> In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.

The CVRA places no limitations on the alternative procedures that a court may fashion other than that the procedures be reasonable to effectuate the act and that they "not unduly complicate or prolong the proceedings." *Id.*

In this case, under the CVRA, a victim could potentially include any payment cardholder or card issuer who suffered a financial loss as a result of the defendant's alleged criminal conduct. That could include well over 150,000 different payment cardholders and potentially thousands of card issuers, ranging from large financial institutions to small credit unions.

3

Although the United States can identify losses arising from the defendant's conduct, it has become apparent from the progression of this case that it will be difficult to identify the individuals and/or entities that suffered actual losses. In other words, the United States does not know precisely how many individuals or entities would qualify as victims under 18 U.S.C. § 3771. This is because the process for identifying who ultimately suffered a loss in the context of the misuse of payment cards is complex. Depending on the nature of the loss and the time by which it was identified, the loss could have been borne by the cardholder, the card issuer, or even the merchant at which the card was used without authorization. Moreover, even if the United States did know, individually noticing each of these potential victims would be, at a minimum, exceedingly burdensome, complicated, and time-consuming. Indeed, neither the government nor the Court has the resources to accord every potential victim individualized notice required by § 3771(a).

Therefore, due to the uncertainty regarding the identity of all of the potential victims in this case, as well as the large number of such potential victims, the United States would use—with the Court's permission—the Department of Justice's website for large cases, http://justice.gov/largecases, to direct victims to a case-specific website where all required notices would be posted. Upon entry of the proposed order, the United States also would issue a press release informing individuals and entities who believe that they may be victims to access the Department of Justice website for more information. Subsequently, victim notification at the post-sentencing stage would be provided through the Bureau of Prisons' website, www.bop.gov.

Ample precedent exists to use alternative notification procedures under the CVRA in such a situation. In fact, in other cases where the government could not determine precisely which entities and individuals would qualify as victims under 18 U.S.C. § 3771(d)(2) and large

numbers of such potential victims were involved, courts have routinely permitted the United States to use alternative methods to notify potential victims. *See, e.g.*, *United States v. Bondarenko*, No. 2:17-CR-306-JCP-PAL, 2018 WL 1413972, at *2 (D. Nev. 2018) (granting government's motion to notify victims pursuant to the CVRA via the Justice Department's website in case involving the "large-scale trafficking of compromised credit card data"); *United States v Babich*, 301 F. Supp. 3d 213, 217–18 (D. Mass. 2017) (granting government request for alternative notification procedures in healthcare fraud prosecution but with restrictions on the information to be conveyed to potential victims); *United States v. Merrill*, No. 14-40028-TSH, 2014 WL 6387368, at *2 (D. Mass November 14, 2014) (similar); *United States v. Saferstein*, No. 07-CR-557, 2008 WL 4925016, at *3–4 (E.D. Pa. November 18, 2008). Indeed, this Court just last year authorized an alternative notification method in *United States v. Dallmann*, No. 1:19-CR-253, Dkt. 32 (E.D. Va. Sept. 24, 2019), another case involving a large number of potential victims.

      Accordingly, the United States respectfully requests that the Court authorize the use of alternative notification methods to meet the government's obligations under the CVRA.

//

//

//

//

//

//

//

//

## CONCLUSION

For the reasons stated herein, the United States requests that the Court grant the instant Motion and enter the proposed Order.

Respectfully submitted,

Date: January 16, 2020

G. Zachary Terwilliger
United States Attorney

_____/s/_____
Alexander P. Berrang
Kellen S. Dwyer
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Alexander.P.Berrang@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF) of the foregoing to the attorneys for the defendants.

By:         /s/
Alexander P. Berrang
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Alexander.P.Berrang@usdoj.gov