IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 1:15CR245-001 |
| ALEKSEI YURIEVICH BURKOV, | Hon. T.S. Ellis III |
| Defendant. | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

COMES NOW the defendant, ALEKSEI YURIEVICH BURKOV, by counsel, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission *Guidelines Manual* respectfully files his position with respect to sentencing factors.

**CORRECTIONS, CHANGES AND ADDITIONS TO PSIR**

Defendant has reviewed the preliminary presentence report ("PSR") and any corrections noted have been made. However, attached hereto are several items as additional submissions for the Court's consideration – a statement by Defendant dictated to counsel during a video conference (Attachment 1); and letters from Defendant's mother and sisters (Attachments 2-4).

**OBJECTIONS**

There are no objections to the Presentence Report and the Probation Officer's calculations as to sentencing factors and the resultant applicable sentencing guideline calculation.

**SUMMARY OF ARGUMENT**

The Defense agrees with the government that the Probation Officer's calculations are technically correct, resulting in an Offense Level Total of 39 and a Criminal History Category I, resulting in a Guideline Range of 262 to 327 months. In fact, the guidelines as calculated adopt

the factors agreed to in the Plea Agreement. The counts of conviction pursuant to the plea in this case allow a maximum 180 month sentence to be imposed. Defendant's position is, however, that manner of the calculation of the loss amount for guideline purposes and the 18 U.S.C. §3553(a) factors most relevant in this case suggest that the Court should consider a much lower sentence than the combined statutory maximum sentence allow. Even a sentence of 180 months is excessive and this Court certainly has discretion to order a variance if the Court does not believe that the Sentencing Guidelines provide for a fair sentence. See, e.g., *Spears v. United States,* 555 U.S. 261 (2009); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States,* 552 U.S. 85 (2007); *Pepper v. United States*, 131 S.Ct. 1229 (2011); *Williams v. New York*, 337 U.S. 241 (1949), *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007).

## CHRONOLIGICAL AND PROCEDURAL BACKGROUND

The genesis of this case could be regarded as starting with the death of Defendant's father in 2004 at age 53 when Aleksei was 13 or 14 years of age. Due to his father's death, the family entered into difficult times and Aleksei reports that he was depressed for a couple of years. While he reported his childhood was normal, after his father's death the family's financial situation deteriorated and was anything but normal. In time, as a young teenager, he was greatly influenced by older people he had met through the internet.

Defendant makes no excuse, however, when as a young adult, he continued to engage in criminal conduct involving the world of computers - the conduct for which he has pled guilty and is laid out in the Statement of Facts. He is extremely remorseful for his conduct and the decisions he made.

## DISCUSSION OF SPECIFIC SENTENCING FACTORS

**Specific Offense Characteristics - §2B1.1 – Larceny, Embezzlement And Other Kinds of Theft:**

The probation officer has correctly assessed the Base Offense Level for Defendant's offense at 6, pursuant to §2X1.1(a) and §2B1.1. See PSR, ¶29. The guideline calculations subject to a two-level enhancement because a substantial part of the scheme was committed from outside the United States, and a further two-level enhancement because the offense involved trafficking of an unauthorized access device. See PSR, ¶42, 43. The most significant enhancement applied in this case involves the loss amount. The loss is assessed a twenty-four level enhancement pursuant to §2B1.1(b)(1)(L) because the offense caused losses in excess of $65 million, but less than $150 million, see PSR, ¶5 and 39. These guidelines were stipulated as applicable in this case, however, the question for this Court to address is whether these guideline enhancements are fairly imposed on Mr. Burkov.

### §2B1.1(b) - Loss Amount Enhancement

As the most significant Guideline element in this case, Under §2B1.1, Defendant is subject to an enhancement of twenty-four levels because the presumptive loss amount suffered by the credit card companies total more than $65 million but less than $150 million. See §2B1.1(b)(1)(M). This figure is based upon a default figure of $500.00 per access device as contained in the Statement of Facts and as permitted by the $500 per access device calculation suggested by §2B1.1, Application Note 3(F)(i) and not upon any actual loss figure. Frankly, the Sentencing Commission appears to present no empirical data that supports the Loss Amount Table provided in §2B1.1(b)(1) and statistics assembled by a recent survey of fraud sentencing and by the Sentencing Commission itself suggest that this enhancement fails to account for

national experience. While restitution is mandatory in this case, at the drafting of this pleading there has been a claim from a single card company - Capital One Bank - in the amount of $7,000.85, rendering the appropriateness of a sentence based on over $65 million in losses highly suspect. Though the Loss Amount Table has been updated periodically to account for inflation, there is no explanation for why offenders whose crimes involve losses of $65 million should be treated the same as those whose crimes cost victims $25,000,000, let alone why any of their calculations are what they are. And without presenting any basis for computing the loss amount in a case like Mr. Burkov's - at $500 per access device - this Court should not impose a sentence based on a loss estimate this high. Federal sentencing should not be imposed on the basis of such a speculative determination.

The Sentencing Commission realizes that they have a problem, noting in Application Note 20(C) that "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense". Courts across the nation apparently agree – in a 2017 study published in the Iowa Law Review, it is observed that the actual average sentences imposed nationwide pursuant to §2B1.1 are below the guideline minimum at every point on the Loss Amount Chart, and have been since *Booker*. See, e.g., Mark W. Bennett, et. al., *Judging Federal White-Collar Fraud Sentencing: An Empirical Study Revealing the Need for Further Reform,* 102 Iowa L. Rev. 939 (2017) at 960-962. Available at: https://ilr.law.uiowa.edu/print/volume-102-issue-3/judging-federal-white-collar-fraud-sentencing-an-empirical-study-revealing-the-need-for-further-reform/.

A sentence of 180 months based on the counts of conviction presents a stark departure from §2B1.1 sentences generally. The Sentencing Commission reported 2 years ago that of 6,029 fraud cases reported to the Commission in FY 2017, with an average loss of $6,100,603, resulted

in average sentences of 26 months. See "Overview of Federal Criminal Cases – Fiscal Year 2017".  For the fiscal year ending September 30, 2019, mean sentences in fraud cases ran from 22 months (Criminal History Category I) to 40 months (Criminal History Category VI). See U.S. Sentencing Commission, 2019 Sourcebook of Federal Sentencing Statistics, at Table 27. (Attachment 5).  The full sourcebook available at: https://www.ussc.gov/research/sourcebook-2019.

As the Supreme Court noted in *Kimbrough v. United States,* 552 U.S. at 109, the Sentencing Commission has a distinctive, institutional role of basing its determinations on empirical data and national experience; by imposing an enhancement regardless of knowledge or intent it is difficult to imagine how this enhancement "reflect[s] a rough approximation of sentences that might achieve [18 U.S.C.] §3553(a)'s objectives."  It is difficult to see how empirical data and national experience do not demand a significant variance from the guidelines. In cases like this one, a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." See *Kimbrough,* 552 U.S. at 109, *Spears v. United States*, 555 U.S. 261 at 264 (2009), *Rita v. United States,* 551 U.S. 338 at 348 (2007). We respectfully ask that the Court ignore this enhancement and grant a significant departure because of this failure to fairly differentiate Mr. Burkov from other offenders.

### §2B1.1(b)(10)(B) -A Substantial Part of the Scheme Was Committed Outside the United States

A two-level enhancement has been levied against Mr. Burkov because the scheme at the heart of this case was committed from Russia.  Of course, that's where the defendant lived his entire life.  While the facts to make a prima facie case for this enhancement are agreed to and frankly undisputable, the fact of the matter is that there is nothing that differentiates Mr. Burkov's conduct from what ordinary credit card fraudsters and hackers do in the United States

every day. This enhancement merely treats foreigners more harshly than home-grown offenders based on the country of their residence. Given the significant advantages American citizens have in the criminal justice system, such as a familiarity with the law, proximity to family and friends, the ability to communicate in English and access to programs in the Bureau of Prisons that provide pre-release supervision in a halfway house, any defendant in this position is already being treated more harshly than a person who, whether here legally or not, committed a crime in the United States. Given that he had never traveled to the United States before he was arrested in Israel and extradited here he has even more to fear from American law, not less. It also seems incongruent with the fact that someone sitting in Russia, South Africa, Madagascar, the United Kingdom, Thailand, China or Columbia can reach out through the world wide web as quickly and easily as someone in New York, Washington D.C or Los Angeles yet be treated differently for guideline purposes.

## 18 U.S.C. §3553(a) Sentencing Factors

**The nature and circumstances of the offense:** Mr. Burkov developed and operated website that allowed others to purchase, and allowed others and him to profit from stolen credit card data. He also facilitated others in the criminal community in sharing criminal conduct with each other. The facts of the offense conduct are set out in the Statement of facts at length and are not repeated here.

Mr. Burkov is a Russian citizen and was arrested in December 2015 while on vacation in Israel. He remained incarcerated in Israel as extradition issues played out. Although he initially agreed to speak with United States law enforcement officials, and in fact did so, Russia quickly indicated a desire to have him extradited to Russia for trial there. The competing interests litigated the issue for over three years until a ruling by the Israeli Supreme Court went in the

favor of the United States.  After his extradition to the United States, he reviewed the evidence presented by the Government, consulted with counsel and entered guilty pleas to three counts of the superseding indictment.  It is counsels understanding at no time did Mr. Burkov have the benefit of American counsel to explain his rights and liabilities on the charges brought against him in the United States.  Though Mr. Burkov is entitled to have that time count toward the sentence imposed by this Court pursuant to 18 U.S.C. §3585(b)(1), we respectfully ask that the Court consider the extended time he spent in conditions far different from those in United States custody.

**History and characteristics of the defendant**:   Mr. Burkov has lived in Russia his entire life, and this case is his first and hopefully only ever, criminal conviction.  As noted above, Aleksei's father died when he was a young teenager.  Aleksei himself was the youngest of three children in the family.  His father's death had a significant negative impact on the family financially and he describes times as difficult. It was after his father's death that he befriended people on the internet and eventually involved himself in illegal behavior. This eventually evolved into the conduct in this case.

Despite his conduct, he has maintained close ties with his mother and sisters who have written letters of support and we do ask they be taken into consideration.

**(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:**

As far as deterrence is concerned, policy and opinion are all over the place. For example in 2016, the U.S. Department of Justice Office of Justice Programs published an informational brochure entitled "Five Things About Deterrence" available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.  That publication summarized scientific and

research findings and noted specifically noted that "[L]aws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective partly because criminals know little about the sanctions for specific crimes. More severe punishments do not "chasten" individuals convicted of crimes, and prisons may exacerbate recidivism." Further research references are contained therein.  Suffice it to say that "deterrence" is an easy term to enunciate but a difficult term to translate.

**Avoidance of unwanted disparity in sentences:** In the related case of U.S. v. Yeliseyev, 1:16CR310, an original sentence of 72 months was imposed.  This represented a variance sentence from the guidelines of 97-121 months and was later reduced to 48 months.

As for fraud related sentences generally, in addition to the discussion above, the U.S. Sentencing Commission just recently published the Interactive Data Analyzer (IDA) described as "an online tool that can be used to explore, filter, customize, and visualize federal sentencing data" available at [https://www.ussc.gov/research/interactive-data-analyzer](https://www.ussc.gov/research/interactive-data-analyzer). In utilizing that tool, for the Eastern District of Virginia, fraud sentences for 2019 resulted in average and median imprisonment lengths of 37 and 27 months respectively and only 2.4% of cases resulted in sentences of 120 months or more – very consistent with the observations in the Iowa Law Review article cited above.

**The need to provide restitution to victims of the offense:**  The parties will present a restitution order in favor of Capital One Bank in the amount of $7,000.63.  This has been the only claim of which we are aware based on the notice published by the Government pursuant to the Court's permission.

Defendant has also agreed to a money judgment for forfeiture purposes consistent with Paragraph 11 of the Plea Agreement in this matter.

## CONCLUSION

This is the difficult decision the court must make this case - how much prison time is enough, but not too much, to meet the aims of 18 U.S.C. §3553(a) in a case where the Guidelines fail to suggest a fair sentence. The statutory maximum sentence in this case is 180 months based on the counts of conviction. The national average for fraud cases is much lower as reflected above and fairly consistently below guidelines.

As for Mr., Burkov, his statement professes that he is done with criminal behavior. He has now had over 4 ½ years within the confines of various institutions, solely as a result of his arrest on the charges in this case, to think about his situation; separation from his family, and loss of his relationships that he treasured. Aleksei was 26 at the time of his arrest and just turning turned 30. He is a bright and engaging individual and has the ability to have a successful recovery from this past life. A sentence of no more than 84 months, coupled with this Court's orders on restitution and forfeiture, would be more than enough to reflect the seriousness of the offense, promote respect for the law and provide just punishment. As a Russian national with some college experience, there is little educational or vocational treatment available in a federal prison that would help him to any great extent. He suffers from a chronic thrombosis condition requiring continuing medication. He will be subject to deportation upon release there are no programs available that result in any reduction of sentence or sentence credit available to him.

The Government asks that the Court impose a significantly higher sentence to adequately deter others from perpetrating similar crimes. Again, greater sentences do not result in greater deterrence. Seven years in prison is more than enough to afford adequate deterrence for future criminal conduct and protect the public from further crimes of others. Given that Mr. Burkov

had never been to the United States before and was arrested in Israel, the tremendous power of the United States to apprehend criminals around the world is clear. Coupled with seven years in prison, there is no question that Mr. Burkov's former associates will know what they face if they violate American law. The people of the United States have the additional security of knowing that Mr. Burkov will be deported following his sentence.

Given that he has already been taken from his home and family to be held in custody in two foreign countries where he does not speak the language, has no family or friends and is not eligible for any program that would shorten his sentence, his sentence will be harsher than those served by most others serving time in the Bureau of Prisons, We believe that a sentence of no more than 84 months would accomplish all of the goals of 18 U.S.C. §3553(a).

Respectfully submitted,

_____/s/_____
Gregory E. Stambaugh
VSB # 16089
Counsel for Defendant
Law Office of Gregory E. Stambaugh
9100 Church Street, Ste 103
Manassas, VA 20110
Phone: (703) 331-0220
Fax: (703) 331-3588
gregslaw@verizon.net

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was electronically filed and served via the Court's CM/ECF system to all counsel of record this 19th day of June, 2020.

I also certify that on the same date, I will send a true and correct copy of the foregoing by e-mail to the following:

William Byerley
United States Probation Officer
william_byerley@vaep.uscourts.gov

_____/s/_____
Gregory E. Stambaugh
VSB # 16089